# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

NUSRAT RIZVI, and
EILEEN RIZVI,
     Plaintiffs,

     v.

URSTADT BIDDLE PROPERTIES INC.
ET AL.
     Defendant.

No. 3:17-cv-01410-VAB

## RULING AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS AND CROSS MOTIONS FOR SANCTIONS

Nusrat and Eileen Rizvi ("Plaintiffs") filed this lawsuit on August 21, 2017. Compl., ECF No. 1. Defendants variously moved to dismiss the Complaint. ECF Nos. 10, 14, 19. On October 25, 2017, Plaintiffs amended their complaint. Am. Compl., ECF No. 22. They further amended their complaint on November 15, 2017. Pl. Mot. to Amend/Correct Am. Compl. ECF No. 38.

Defendants then variously moved to strike portions of Plaintiffs' Amended Complaint. ECF Nos. 25, 27-30. On November 7, 2017, Defendants Urstadt Biddle Properties Inc. and Willing L. Biddle (collectively "UBP Defendants") filed a motion for sanctions under Federal Rule of Civil Procedure 11. Mot. for Sanctions Pursuant to Rule 11, ECF No. 26.

On January 17, 2018, the Court convened a hearing on the motions to dismiss and motions to strike. ECF No. 61. Following the hearing, the Court held that Plaintiffs were entitled to amend as of right, denied the motions to strike, and dismissed, without prejudice, the motions to dismiss as moot. Ruling on Def. Mot. to Strike Am. Compl., ECF No. 61.

On February 1, 2018, Defendants Coles, Baldwin & Kaiser, LLC, John B, Kaiser, and Spa Thea, LLC, dba Andrew Stefanou Salon and Spa (collectively "Stefanou Defendants") filed

a motion to dismiss the Amended Complaint, and to incorporate their earlier motion to dismiss. Stefanou Defendants Mot. to Dismiss Am. Compl., ECF No. 66, incorp. ECF No. 19. That same day, UBP Defendants filed a motion to dismiss the Amended Complaint, and to incorporate their earlier motion to dismiss. UBP Defendants Mot. to Dismiss Am. Compl., ECF No. 67, incorp. ECF No. 10. On February 2, 2018, Defendants Hinckley Allen & Snyder LLP and Noble Allen (collectively "HAS Defendants") filed a motion to dismiss the Amended Complaint, and to incorporate their earlier motion to dismiss. HAS Defendants Mot. to Dismiss Am. Compl., ECF No. 68, incorp. ECF No. 14. That same day, Tibbetts Keating & Butler LLC filed a motion to dismiss the Amended Complaint. Tibbetts Keating & Butler LLC Mot. to Dismiss Am. Compl., ECF No. 69. On April 27, 2018, Defendant Mario Cometti filed a motion to dismiss the Amended Complaint, and to incorporate the legal arguments in the Tibbetts Keating & Butler LLC motion to dismiss, Cometti Mot. to Dismiss Am. Compl., ECF No. 78, incorp. ECF No. 69.

For the reasons set forth below, the Court **GRANTS** Defendants' motions to dismiss **WITH PREJUDICE**, ECF No. 66, incorp. ECF No. 19, ECF No. 67, incorp. ECF No. 10, ECF No. 68, incorp. ECF No. 14, ECF No. 69, ECF No. 78, incorp. ECF No. 69, **DENIES** UBP Defendants and Plaintiffs' cross-motions for sanctions, and orders the case closed.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Factual Allegations

Plaintiffs initially alleged that UBP Defendants and Andrew Stefanou conspired to reduce the sale price of their business, the Lanphier Spa, *id.* ¶ 15,[1] and that a host of individuals and

---

[1] A longer description of the factual and procedural background is detailed in the Court's Ruling on Defendants' Motions to Strike Amended Complaint, and is incorporated here by reference. Mot. to Strike Am. Compl., ECF No. 61.

organizations, including a number of attorneys, conspired to deprive Plaintiffs of their livelihood and rights.

Plaintiffs, in their Amended Complaint, ECF No. 22, allege: (1) tortious interference with contract, Am. Compl. ¶ 66-75; (2) breach of contract, *id*. at ¶ 76-80; (3) misappropriation, *id*. at ¶ 81-96; (4) conspiracy to engage in a pattern of racketeering activity, *id*. at ¶ 97-127; (5) violations of unfair business practices and Connecticut Business & Professional Code, *id*. at ¶ 128-146; (6) breach of the covenant of good faith, *id*. at ¶ 147-167; (7) intentional infliction of emotional distress, *id*. at ¶ 168-186; (8) fraud, *id*. at ¶ 187-199; (9) violation of the False Claims Act, 13 U.S.C. § 3729(A)(1)(B) and (A)(2), and using a false record or statement to get a false claim paid material to a false claim, *id*. at ¶ 200-203; (10) violation of Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a, et seq., *id*. at ¶ 204-209; (11) civil conspiracy, *id*. at ¶ 210-215; (12) forgery, Conn. Gen. Stat. § 53a-139, *id*. at ¶ 216-224; and (13) mail fraud, *id*. at ¶ 225-235. Plaintiffs allege additional facts in a motion to amend/correct the amended complaint. Pl. Mot. to Amend/Correct Am. Compl., ECF No. 38.

The case principally concerns the Plaintiffs' loss of their business, "The Spa." Plaintiffs operated The Spa for twenty years, from 1992 until 2012. Compl. at ¶ 15. Plaintiffs entered into a five-year lease of the underlying property in 1997. *Id*. at ¶ 16. Urstadt Biddle Properties Inc. acquired the underlying property in 1998, *id*. at ¶ 19, and granted Plaintiffs a five-year lease extension lasting until November 30, 2011. *Id*. at ¶ 20. Plaintiffs allege that the new lease agreement contained a non-compete clause. Am Compl. at ¶ 41. In 2009, Plaintiffs "invested $3 million dollars into business premises improvements." *Id.* at ¶ 43. Shortly thereafter, they began discussing the sale of The Spa to the spa's manager, Defendant Stefanou. *Compl.* ¶ 24. In January 2011, Plaintiffs notified UBP that they intended to renew the 2006 lease extension. *Id*. at

¶ 25. After an exchange of documents, UBP informed Plaintiffs that Mr. Stefanou's signature would be required. *Id*. at ¶ 33.

In the weeks that followed, Plaintiffs allege that UBP kept adding restrictions to the lease renewal, and Mr. Stefanou kept lowering his offering price in an "underhanded manipulation of the negotiations." *Id.* ¶ 34-38. Plaintiffs allege that they confronted Mr. Stefanou and terminated his employment as a result, but UBP refused to negotiate further and rented the facility to Mr. Stefanou instead. *Id.* ¶¶ 37, 39-41. According to Plaintiffs, that rental and subsequent proceedings in court demonstrate that "[t]he Defendants embarked on the 'concerted' efforts to steal the Plaintiff[s'] business and earned 'good will.'" Am. Compl. at ¶ 47.

Plaintiffs allege that Defendants have acted "collectively [to] create[] an elaborate artifice using multiple corporate entities and existing businesses and established professionals to unlawfully induce Plaintiff[s] to assign their business and earned good will over to the control of the Defendants." *Id*. at ¶ 48. Plaintiffs focus on a January 10, 2012 settlement as the key "proof of the 'conspiracy' and evidence of the 'illegal' acts of the Defendants." *Id*. at ¶ 64. On that day, Plaintiffs and UBP reached a settlement agreement that "enabled Plaintiff[s] to remain in possession [of their business rental property] for a period of six months." *Id*. at ¶ 64b. Plaintiffs allege that Defendants "forged Plaintiff[s] name[s] on a full release of all claims" that day. *Id*. at ¶ 64j. Plaintiffs have alleged highly similar claims in several state court proceedings.

## B. Procedural Background

Before this filing, this litigation had a substantial history in the Connecticut state courts. *See, e.g.*, *Lanipher Day Spa, Inc., et al. v. Urstadt Biddle Properties, Inc.*, FST-CV16-6029248-S (Conn. Super. Ct. 2017), *Tibbetts Keating & Butler, LLC v. Lanipher Day Spa, Inc., et al. v. Lanipher Day Spa, Inc., et al.*, FST-CV12-5013946-S (Conn. Super. Ct. 2017). Superior Court

Judge Kenneth Povodator summarized the litigation history in his June 2, 2017 Memorandum of Decision:

> This is second generation litigation arising from incidents that primarily occurred in the 2011-12 time frame. The earlier round of litigation was resolved or withdrawn in 2012-13 (with a vestige dismissed in 2015). Virtually the entire current dispute arises from the prior litigation and circumstances surrounding the termination of the prior litigation, including claims relating to execution (or non-execution) of a formal release of claims in the courthouse on January 10, 2012.

*Lanipher Day Spa, Inc., et al.*, FST-CV16-6029248-S at *1. Judge Povodator then held that Defendant UBP was entitled to summary judgment on the issues of tortious interference, conversion, fraud and misrepresentation, and CUTPA, *Id.* at *18, that Defendant HAS was entitled to summary judgment on the issues of tortious interference, conversion, fraud and misrepresentation, CUTPA, and all other counts directed at the Defendant, *Id.* at *20, and that Defendant Stefanou was entitled to summary judgment on the issues of tortious interference, conversion, fraud and misrepresentation, CUTPA, and all other counts directed at the Defendant. *Id.* at *22.

## II.    STANDARD OF REVIEW

In every case, a court must determine whether it has subject matter jurisdiction. In evaluating a motion under Rule 12(b)(1) for lack of subject matter jurisdiction, the Court "must accept as true all material factual allegations in the complaint but need not draw inferences favorable to the party asserting jurisdiction." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). The plaintiff bears the burden of showing that subject matter jurisdiction is proper based on facts existing at the time he or she filed the complaint. *Scelsa v. City Univ. of New York*, 76 F.3d 37, 40 (2d Cir. 1996) (citations omitted).

In cases involving prior litigation between or among the parties, a court must determine if it is precluded from adjudicating some or all of the claims on account of prior rulings on the merits of those claims. The doctrine of *res judicata*, or claim preclusion, generally dictates that "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327, 99 S. Ct. 645, 649, 58 L. Ed. 2d 552 (1979). "In considering the preclusive effect of a state court judgment on a subsequent federal action, under the Full Faith and Credit Act, 28 U.S.C. § 1738, [Second Circuit courts] usually consult the preclusion laws of the state in which the judgment was issued." *Nestor v. Pratt & Whitney*, 466 F.3d 65, 71 (2d Cir. 2006) (holding that the typical approach is not appropriate for administrative appeals under Title VII).

"Under Connecticut law, the doctrine of *res judicata* is based on the policy that a party should not be allowed to relitigate a claim which it already had an opportunity to litigate. Accordingly, a former adjudication of a claim on its merits is an absolute bar to a subsequent action on the same claim or on any claim based on the same operative facts that might have been made in the prior action." *Sekor v. Capwell*, 1 F. Supp. 2d 140, 145 (D. Conn. 1998) (internal citation omitted). The party asserting the defense of *res judicata* bears the burden of proving that the prior action resulted in a ruling of the claim on its merits, and that res judicata applies to the current case. *Ventres v. Goodspeed Airport, LLC*, 301 Conn. 194, 205, 21 A.3d 709, 716 (2011).

Once matters of subject matter jurisdiction and claim preclusion are addressed, a court will evaluate any claims that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(6). In reviewing a complaint under Rule 12(b)(6), the court applies "a 'plausibility standard,'" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Second, to survive a motion to dismiss, the complaint must state a plausible claim for relief. *Id.* at 679. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Instead, a plaintiff must allege facts that "nudge[] their claims across the line from conceivable to plausible . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Determining whether the complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

When evaluating a 12(b)(6) motion, the court must accept all factual allegations in the complaint as true and draw all possible inferences from those allegations in favor of the plaintiff. *See York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir.), cert. denied, 537 U.S. 1089 (2002). The issue is not whether the plaintiff ultimately will prevail, but whether the plaintiff has stated a claim upon which relief may be granted such that he should be entitled to offer evidence to support his claim. *See id.* (citation omitted). Courts considering motions to dismiss under Rule 12(b)(6) generally "must limit [their] analysis to the four corners of the complaint," though they may also consider documents that are "incorporated in the complaint by reference." *Kermanshah v. Kermanshah*, 580 F.Supp.2d 247, 258 (S.D.N.Y. 2008).

*Pro se* complaints "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

Even if a *pro se* complaint survives a 12(b)(6) motion, the case may also be dismissed for insufficient process or service of process. Under Federal Rule of Civil Procedure 12(b)(4), a party may file a motion to dismiss due to "insufficient process." Fed. R. Civ. P. 12(b)(4). Rule 12(b)(4)(m) states that "[i]f a defendant is not served within 120 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *See Mares v. United States*, 627 F. App'x 21, 23 (2d Cir. 2015) ("good cause" factors include "relative prejudice to the parties (including whether the action would be barred by the statute of limitations and whether defendant had actual notice of the suit) and whether there is a 'justifiable excuse' for the failure properly to serve.").

Under Federal Rule of Civil Procedure 12(b)(5), a party may file a motion to dismiss due to "insufficient service of process." Fed. R. Civ. P. 12(b)(5). "A motion to dismiss pursuant to Rule 12(b)(5) must be granted if the plaintiff fails to serve a copy of the summons and complaint on the defendants pursuant to Rule 4 of the Federal Rules, which sets forth the federal requirements for service." *Rzayeva v. United States*, 492 F. Supp. 2d 60, 74 (D. Conn. 2007). "Once validity of service has been challenged, it becomes the plaintiff's burden to prove that service of process was adequate." *Cole v. Aetna Life & Cas.*, 70 F. Supp. 106, 110 (D. Conn. 1999).

## III.  DISCUSSION

### A.  12(b)(1) Claims

Stefanou Defendants, HAS Defendants, and UBP Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(1). Stefanou Defendants Mot. to Dismiss Am. Compl.,

UBP Defendants Mot. to Dismiss Am. Compl., HAS Defendants Mot. to Dismiss Am. Compl.

Defendants contend that Plaintiffs do not have standing to sue under the Federal Mail Fraud

statute or Connecticut's criminal forgery statute. Stefanou Defendants Mot. to Dismiss Am.

Compl. at 3 et seq.; HAS Defendants at 7 et seq.; UBP Defendants Mot. to Dismiss Am. Compl.

at 6 et seq. The Court agrees and therefore dismisses counts 12 and 13, ¶¶ 216-235, of the

Amended Complaint as to all Defendants.

The federal mail fraud statute, 18 U.S.C. § 1341, makes it a crime, punishable by

imprisonment for up to 20 years, to use the federal postal system to commit myriad forms of

fraud. This statute, however, does not provide a private cause of action under which private

citizens might seek relief. *See Omotosho v. Freeman Inv. & Loan*, 136 F. Supp. 3d 235, 251 (D.

Conn. 2016) (dismissing a federal mail fraud claim for failure to state a claim because the statute

affords no private cause of action). *See also*, *Pharr v. Evergreen Garden, Inc.*, 123 Fed. App'x.

420, 422 (2d Cir.2005)); *Brandstetter v. Bally Gaming, Inc.*, No. CV 11-2594 JFB GRB, 2012

WL 4173193, at *6 (E.D.N.Y. Aug. 23, 2012) ("It is well established that there is no private

cause of action under the mail fraud statute which is 'a bare criminal statute with no indication of

any intent to create a private cause of action, in either the section in question or any other

section.").

Similarly, Connecticut's criminal statute for second degree forgery, Conn. Gen. Stat.

§53a-139, makes it a crime to forge documents ranging from deeds to physician's prescriptions.

The statute is located in Title 53, Connecticut's penal code. The second degree forgery statute

also does not provide a private cause of action under which private citizens might seek relief.

UBP Defendants argue that while there is little case law on whether §53a-139 creates a private

cause of action, the statute appears to be a "bare criminal statute." UBP Defendants Mot. to Dismiss Am. Compl. at 8. The Court agrees.

Second Circuit courts typically hold that "'a bare criminal statute, with absolutely no indication that civil enforcement of any kind was available to anyone' does not create a cause of action." *Burke v. Patchen*, No. 308CV639MRK, 2008 WL 2783490, at *1 (D. Conn. July 15, 2008), citing *Cort v. Ash*, 422 U.S. 66, 80, 95 S. Ct. 2080, 2081, 45 L. Ed. 2d 26 (1975). *See also*, *Sementes v. Gen. Elec. Co.*, No. 3:14-CV-00131-VLB, 2014 WL 2881441, at *14 (D. Conn. June 25, 2014) ("The court knows of no private cause of action for 'forgery . . .'").

Under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of showing that subject matter jurisdiction is proper based on facts existing at the time he or she filed the complaint. *Scelsa*, 76 F.3d at 40. To meet that burden with respect to counts 12 and 13 of the Amended Complaint, Plaintiffs would have to show that a private cause of action exists under the Federal Mail Fraud statute and Connecticut's criminal statute for second degree forgery. Plaintiffs cannot meet this burden by merely alleging that Defendants engaged in mail fraud or forgery. Rather, Plaintiffs must show that these two criminal statutes created private causes of action. Plaintiffs have cited no case law, legislative history materials, or secondary sources suggesting that private causes of action exist under these statutes. The Court therefore must dismiss counts 12 and 13, ¶¶ 216-235, of the Amended Complaint as to all Defendants, because the Court lacks subject matter jurisdiction over these counts.

**B.** *Res Judicata*

UBP Defendants allege that they are entitled to dismissal of all claims under *res judicata*. UBP Defendants Mot. to Dismiss Am. Compl., ECF No. 67, incorp. ECF No. 10. Urstadt Biddle Properties Inc. and Willing L. Biddle admit that state courts ruled only on "Plaintiffs' claims for

tortious interference, conversion, fraud and misrepresentation, and CUTPA . . ." *Id*. at 4. These

Defendants nevertheless contend that Plaintiffs' remaining counts, including Intentional

Infliction of Emotional Distress, are the same old claims cloaked in new terminology. *Id*. HAS

Defendants allege similar *res judicata* claim preclusion. Stefanou Defendants refer to prior

litigation and insinuate claim preclusion. Stefanou Defendants Mot. to Dismiss Am. Compl.,

ECF No. 66, incorp. ECF No. 19.

When a party credibly asserts claim preclusion under the doctrine of *res judicata*, a court

must determine if it is barred from hearing some or all of the claims, or counts, before it.

*Parklane Hosiery Co.*, 439 U.S. at 327 (". . . a judgment on the merits in a prior suit bars a

second suit involving the same parties or their privies based on the same cause of action.")

Connecticut law clearly holds that parties should not be able to relitigate decisions on the merits.

*Sekor*, 1 F. Supp. 2d at 145. While parties are not entitled to multiple trials against the same

parties on the same causes of action once a decision on the merits has been rendered, *res judicata*

does not afford parties blanket immunity against suits arising from different and distinct causes

of action.

The Court must conduct *res judicata* analyses thoughtfully so that it neither subjects

movants to improper litigation nor deprives non-movants of access to justice. For these reasons,

the Court holds that it must dismiss count I, tortious interference, count VIII, fraud, and count

IX, violations of CUTPA, with respect to Stenfanou Defendants, UBP Defendants, and HAS

Defendants, as Judge Povodator of the Connecticut Superior Court issued a ruling on the merits

of these counts on June 2, 2017. *Lanipher Day Spa, Inc.*, FST-CV16-6029248-S. The Court

cannot dismiss the remaining counts with regard to these defendants or any counts against

defendants Tibbetts Keating & Butler LLC or Cometti, because the record contains insufficient evidence to support a finding of claim preclusion under the doctrine of *res judicata*.

### C. 12(b)(6) Claims

#### a. Remaining Claims Against Defendants Tibbetts Keating & Butler LLC and Cometti

Defendants variously allege that plaintiffs have failed to state any plausible claims for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court agrees.

Following the Court's 12(b)(1) and *res judicata* analyses, counts I-XI survive against Defendants Tibbetts Keating & Butler LLC and Cometti. Plaintiffs, however, have alleged no specific facts against these Defendants. The only assertion against Defendants Tibbetts Keating & Butler LLC and Cometti in Plaintiffs' Amended Complaint, ECF No. 22, are their addresses. Neither Defendant is mentioned in Plaintiffs' amendment to the Amended Complaint. Pl. Mot. to Amend/Correct Am. Compl. ECF No. 38. The Court therefore holds that Plaintiffs have asserted no claims, let alone plausible claims, against these Defendants. The Court further notes that it denied all Defendants' motions to strike and allowed Plaintiffs to amend twice as a matter of right. ECF 61. The Court therefore allowed Plaintiffs ample time and opportunity to allege plausible claims against these Defendants. Finding that Plaintiffs have not alleged specific claims against these Defendants, the Court dismisses all remaining counts with respect to Defendants Tibbetts Keating & Butler LLC and Cometti under 12(b)(6).

#### b. Breach of Contract, Misappropriation, Unfair Business Practices, and Covenant of Good Faith Claims

Plaintiffs allege a host of intertwined contract claims. Though count II of Plaintiffs' Amended Complaint is titled "breach of contract," *id*. at ¶ 76, the prayer for relief for that count and count III, misappropriation, *id*. at ¶ 81, are substantively identical requests for the

court to "enjoin Defendants from tortuously interfering with Plaintiff[s'] contracts."[2] *Id*. at ¶ 81. Plaintiffs do not cite a specific legal basis for the "unfair business practices" claim, *id*. at ¶ 128, but the allegations in count V are similar to the allegations in count IV, breach of covenant of good faith. *Id*. at ¶ 147. Plaintiffs' covenant of good faith claim relates to Defendants obligation to perform their contractual duties fairly. *Id*. at ¶ 149. The Court therefore considers the merits of these intertwined claims simultaneously.

"The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." *Chiulli v. Zola*, 97 Conn. App. 699, 706-07 (2006) (internal quotation marks omitted). When a plaintiff "sets forth a specific contractual obligation and allege[s] that it has not been met," his or her complaint should not be dismissed. *Commissioner of Labor v. C.J.M Services, Inc.*, 268 Conn. 283, 294 (2004). However, "a bald assertion that the defendant has a contractual obligation, without more, is insufficient to survive a motion to strike." *Id*.

In Connecticut, the vast majority of contracts include an implied covenant of good faith and fair dealing, which operates as a rule of interpretation to ensure that rights under the contract are not unfairly impeded. *Magnan v. Anaconda Indus., Inc.*, 193 Conn. 558, 566 (1984) (noting that the Restatement (Second) of Contracts recognizes this covenant in every contract "without limitation") (citing Restatement (Second) of Contracts § 205 (1979)); *Gupta v. New Britain General Hosp.*, 239 Conn. 574, 598 (1996) ("Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement.") (citation and internal quotation marks omitted); *De La*

---

[2] As explained above, Count I, tortious interference, is dismissed with respect to Stefanou, UBP, and HAS Defendants under the doctrine of *res judicata*, and is dismissed with respect to Defendants Tibbetts Keating & Butler LLC and Cometti due to Plaintiffs failure to allege any specific facts against these Defendants. Fed. R. Civ. P. 12(6).

*Concha of Harford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 433 (2004) ("The covenant of good faith and fair dealing presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term.") (citation and internal quotation marks omitted).

"Most courts decline to find a breach of the covenant apart from a breach of an express contract term." *Landry v. Spitz*, 102 Conn. App. 34, 43 (Conn. App. Ct. 2007), (internal citation omitted); *see also*, *Lopiano v. Gedney*, No. X05CV020191749, 2004 WL 2943139, at *7 (Conn. Super. Ct. Nov. 15, 2004) ("Because [Defendant] did not breach its contract, it did not breach any implied duty of good faith and fair dealing."); *Leisure Unlimited, Inc. v. Dep't 56, Inc.*, No. CIV. 3:95CV2039 AHN, 1996 WL 684406, at *5 (D. Conn. May 3, 1996) (dismissing implied covenant claim when Defendants terminated a dealership agreement, noting that "because the terms of dealership agreements expressly provide for unilateral termination … the covenant of good faith and fair dealing may not be applied to override such terms."); but see *Casper v. Combustion Eng'g, Inc.*, No. CV 97-0570516S, 1998 WL 389215, at *8 (Conn. Super. Ct. June 23, 1998) (breach of implied covenant "generally occurs where there is no other contractual breach, or in other words, where the party lacking good faith has adhered to the letter of the contract") (citing Restatement (Second) of Contracts § 205 (1981)).

At the very least, "the claim that the covenant has been breached must be tied to an alleged breach of a specific contract term, often one that allows for discretion on the part of the party alleged to have violated the duty," and cannot be used to suggest a violation of a contract term that specifically intended to give unlimited discretion to one party. *Landry*, 102 Conn. App. at 47 (internal citations omitted); see also *E. Point Sys., Inc. v. Maxim*, No. 3:13-CV-00215 VLB, 2014 WL 523632, at *5 (D. Conn. Feb. 7, 2014) (dismissing breach of implied covenant counter

claim because "Defendants do not cite to any specific provisions of any contract which they allege constituted the basis for the breach of the implied duty of good faith and fair dealing."); *Beckenstein Enterprises–Prestige Park, LLC v. Keller*, 115 Conn. App. 680, 693-94, cert. denied, 293 Conn. 916, 979 A.2d 488 (2009) ("[A] claim for breach of the implied covenant of good faith and fair dealing must be based on the terms of the contract and cannot be applied to achieve a result contrary to the express terms."); *Eis v. Meyer*, 213 Conn. 29, 37, 566 A.2d 422, 426 (1989) (covenant of good faith and fair dealing did not require enforcement of easement, even after the defendant's alleged bad faith, when the easement's express terms provided that it would be terminated "at any time when any building [] on any part of the land … is enlarged.").

Plaintiffs do not identify a specific contractual obligation in their breach of contract or intertwined contract claims. Am. Compl. ¶ 76-96, 128-147. Rather, they allege that Defendants behaved "wanton[ly] and malicious[ly]," ¶ 79, systematically infringed on Plaintiffs' business, *id*. at ¶ 88, 134-36, 156, "elicited information for illegal purposes," *id*. at ¶ 164, etc. Further, none of Plaintiffs' four responses to the motions to strike and motions to dismiss, ECF No. 36, 37, 74, and 81, cite a particular contract provision. Rather, they baldly assert fraudulent conspiracies and a series of bad acts. Though Plaintiffs' allegations now comprise more than 200 pages, none alert the Court to a specific contractual violation, or to a lack of good faith in implementing that specific contract provision. The Court therefore finds that plaintiffs have failed to "nudge[] their claims across the line from conceivable to plausible . . . .", *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and the Court must dismiss counts II, III, V, and VI against all remaining parties under Rule 12(b)(6).

### c. Racketeering, False Claims Act, and Civil Conspiracy

Plaintiffs allege a number of claims related to a purported conspiracy among the

Defendants to deprive Plaintiffs of income and to file false records, including count IV, conspiracy to engage in a pattern of racketeering activity ("RICO activity"), *Am. Compl*. at ¶ 97-127, count IX, violation of the False Claims Act, 31 U.S.C. § 3729, *id*. at ¶ 200-203, and civil conspiracy. *Id*. at ¶ 210-215.

To substantiate a claim of RICO activity, a Plaintiff must demonstrate serious criminal activity conducted by an established criminal enterprise. *Carousel Foods of Am., Inc. v. Abrams & Co.*, 423 F. Supp. 2d 119, 122 (S.D.N.Y. 2006). The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.A. § 1962, states, in relevant part:

> It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C.A. § 1962 (b). Contract disputes rarely rise to the level of RICO activity. *Id*. Typically, RICO investigations are conducted by the government on serious, often violent criminal syndicates. *See, e.g.*, *United States v. Allen*, 155 F.3d 35, 37 (2d Cir. 1998) ("In 1989, the Government filed this civil RICO action against 112 defendants involved in the solid waste carting industry on Long Island. Named as defendants were alleged organized crime families, a trade association, a labor union, carting firms and their officers and directors, and a number of town employees who were alleged to have taken bribes for permitting trucks loaded with solid waste to be underweighed at the scalehouse of the Oyster Bay landfill.").

Conspiracies under the False Claims Act may arise in the context of RICO litigation, but the False Claims Act requires independent proof of "a false or fraudulent claim for payment or approval" submitted to the federal government. 31 U.S.C. § 3729(a)(1)(A). Civil conspiracy is

not a specific legal claim, but given Plaintiffs' allegations, the Court treats the civil conspiracy count as intertwined with the RICO and False Claims Act allegations.

Nothing in the pleadings supports a finding that Defendants engaged in a conspiracy on the level of a RICO syndicate. Further, the Plaintiffs have not alleged that such a syndicate attempted to defraud the federal government of funds in violation of the False Claims Act. Plaintiffs have not argued that Defendants built a criminal enterprise, such as the solid waste carting enterprise described in *U.S. v. Allen*, involving 112 defendants "from organized crime families, a trade association, a labor union, carting firms and their officers and directors, and a number of town employees." *Allen*, 155 F.3d at 37. While a criminal syndicate need not have a precise number of participants, the *Allen* case illustrates the magnitude of criminality involved in RICO cases. For Plaintiffs to substantiate such a claim, they would need to demonstrate concerted criminality. *Carousel Foods of Am.*, 423 F. Supp. 2d at 122. Because the record does not contain plausible allegations that Defendants conspired to maintain a criminal enterprise that defrauded Plaintiffs and the federal government, the Court must dismiss counts II, III, V, and VI against all remaining parties under rule 12(b)(6).

### d. Intentional Infliction of Emotional Distress

The remaining count alleges intentional infliction of emotional distress. Am. Compl. at ¶ 168-186. Under Connecticut law, four elements must be established to prevail under a claim for intentional infliction of emotional distress: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 210, 757 A.2d

1059 (Conn.2000) (internal quotation marks and citation omitted). "In order to state a cognizable cause of action, Plaintiff must not only allege each of the four elements, but also must allege facts sufficient to support them." *Golnik v. Amato*, 299 F.Supp.2d 8, 15 (D.Conn.2003). "Mere conclusory allegations are insufficient as a matter of law to support a cause of action for intentional infliction of emotional distress." *Huff v. W. Haven Bd. of Educ.*, 10 F.Supp.2d 117, 122 (D.Conn.1998). As with all counts of a complaint, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a valid cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

While Plaintiffs allege the elements of intentional infliction of emotional distress, their allegations are exactly the sort of "threadbare recitals" that fail to state a claim under Federal Rule of Civil Procedure 12(b)(6). Fed. R. Civ. P. 12(6). On the first element, plaintiffs have not submitted statements or writings demonstrating Defendants' intent to inflict emotional distress. Nor have Plaintiffs described a close relationship with most of the Defendants such that defendants knew or should have known that their statements or actions might seriously hurt Plaintiffs. Further, as Judge Povodator observed, much of this dispute relates to the "formal release of claims in the courthouse on January 10, 2012." *Lanipher Day Spa, Inc., et al.*, FST-CV16-6029248-S at *3.

With regard to the second element, Plaintiffs have alleged no plausible, specific "extreme and outrageous" conduct on that day or any other. Finding no plausible, specific alleged writings, statements, or conduct, nor allegations of extreme and outrageous activities, the Court need not turn to the remaining elements of intentional infliction of emotional distress. Because the record does not contain plausible allegations that Defendants intentionally inflicted emotional distress upon the Plaintiffs, count VII is dismissed as to all remaining parties under rule 12(b)(6).

### D. 12(b)(4) and 12(b)(5) Claims

Defendants variously assert issues with process and service of processes under Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5). Fed. R. Civ. P. 12(b)(4), (b)(5). While the Court need not reach process issues in this case, the Court notes that Plaintiffs have admitted their failure to properly serve Defendant Cometti, Pl. Resp. in Opp. to Def. Mario Commetti's [sic] Mot. to Dismiss, ECF 81, and have not replied to the process allegations of the remaining Defendants. Plaintiffs have thus admitted that they failed to properly serve the UBP Defendants, UBP Defendants Mot. to Dismiss Am. Compl., ECF No. 67, incorp. ECF No. 10, the HAS Defendants, HAS Defendants Mot. to Dismiss Am. Compl., ECF No. 68, incorp. ECF No. 14, and Defendant Cometti, Cometti Mot. to Dismiss Am. Compl., ECF No. 78, incorp. ECF No. 69. The Court therefore would have to grant dismissal as to these Defendants, if it reached the issues of sufficient process.

### E. Sanctions

On November 7, 2017, UBP Defendants moved the Court to impose sanctions under Federal Rule of Civil Procedure 11(b)(2)(3) on the *pro se* Plaintiffs. ECF 26. On February 9, 2018, the *pro se* Plaintiffs implored the Court to "address the 'bully' trial tactics of counsel and sanction them accordingly." The pertinent rule states that:

> By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed.R.Civ.P. 11(b)(2-3). The imposition of sanctions for a Rule 11 violation is a matter of discretion, which requires the court to "marshal the pertinent facts and apply the fact-dependent legal standard that informs its determination as to whether sanctions are warranted." *Bristol Heights Assocs., LLC v. Chicago Title Ins. Co.*, No. 3:12-CV-1658 JCH, 2013 WL 5313408, at *2 (D. Conn. Sept. 19, 2013). Based upon the facts in the present case, the Court finds that neither sanctions against the Rizvis nor counsel are warranted.

In the present case, Plaintiffs have informed the Court that they "have chronic, debilitating medical conditions. Specifically, Plaintiff Nusrat Rizvi suffers from leukemia-related myelodysplasia syndrome. . . . Plaintiffs treatment often times leaves him debilitated for prolonged periods of time . . . ." Pl. Resp. in Opp. to Def. Mario Commetti's [sic] Mot. to Dismiss, ECF 81. In addition, Plaintiffs' consistent attempt to participate in this and past litigation—despite their ailments—demonstrates to the Court that Plaintiffs believed, up to this point, that their claims were not frivolous. The Court therefore finds sanctions unwarranted at this time. The Court notifies Plaintiffs, however, that the dismissals of nearly all counts of Plaintiffs' Amended Complaint under Federal Rules of Procedure 12(b)(1) and 12(b)(6) demonstrates the frivolity of those dismissed claims.

With respect to counsel, the Court finds no inappropriate tactics or sanctionable behavior in the record.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' motions to dismiss **WITH PREJUDICE**, ECF No. 66, incorp. ECF No. 19, ECF No. 67, incorp. ECF No. 10, ECF No. 68, incorp. ECF No. 14, ECF No. 69, ECF No. 78, incorp. ECF No. 69, **DENIES** UBP Defendants and Plaintiffs' cross-motions for sanctions, and orders the case closed.

**SO ORDERED** this 28th day of September, 2018, in Bridgeport, Connecticut.

/s/ Victor A. Bolden         
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE